# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CORRECTIONAL MEDICAL CARE, INC.,<br><br>                    Plaintiff,<br><br>              -against-<br><br>BRADFORD J. EBEL,<br><br>                    Defendant. | Index No. _____<br><br>**SUMMONS**<br><br>Plaintiff designates New York County as the place of trial.<br><br>Venue is proper pursuant to CPLR § 503 |

TO THE ABOVE-NAMED DEFENDANT:

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       June 15, 2017

                                    KASOWITZ BENSON TORRES LLP

                                    By:   /s/ Michael P. Bowen
                                          Michael P. Bowen (mbowen@kasowitz.com)

                                    1633 Broadway
                                    New York, New York 10019
                                    (212) 506-1700

                                    *Counsel for Plaintiff Correctional Medical Care, Inc.*

TO:
Bradford J. Ebel
11 York Street
Glasco, New York 12432

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

CORRECTIONAL MEDICAL CARE, INC.,

                Plaintiff,

-against-

BRADFORD J. EBEL,

                Defendant.

---

Index No. _____

**COMPLAINT**

Jury Trial Demanded

Plaintiff Correctional Medical Care, Inc. ("CMC"), for its complaint against defendant Bradford J. Ebel ("Ebel") alleges, based on knowledge as to itself and otherwise upon information and belief, as follows:

### PRELIMINARY STATEMENT

1. This is an action for defamation and conversion against plaintiff's former employee, Ebel, who was CMC's Vice President for Business Development for years. On the last day of February, 2017, Ebel terminated his employment with CMC, a healthcare administration service provider to correctional facilities. He quit after he had been questioned by investigators with the New York Attorney General concerning campaign/charitable contributions he personally made. Around the same time, CMC confronted him with evidence that he had misappropriated over $48,000 from the company by submitting unauthorized and falsified expense reimbursement forms for unapproved and unauthorized "expenses," including but not limited to down payments on personal vehicles, repair of personal vehicles, travel, other personal expenses, and his own charitable and political contributions to organizations unrelated to CMC's business and affiliations.

2. Since his resignation, Ebel has repeatedly disparaged and defamed CMC in an unlawful attempt to blame CMC for his own actions and to persuade clients to terminate their existing contracts with CMC. Instead of telling the truth – that he was questioned by law enforcement about his own personal conduct – he twisted that around to try to falsely impugn CMC.

3. He told managers at a number of correctional facilities, including facilities with current contracts with CMC, that CMC was insolvent, that it had been criminally indicted, and that law enforcement had "raided" CMC's offices and/or the homes of its principals. Each of those statements is false. Ebel knew what he was saying about CMC was false. This was a calculated and sinister slander perpetrated by a former employee who is trying to save his own reputation by maliciously slandering his former employer – and, by implication, his former colleagues.

## PARTIES

4. Plaintiff Correctional Medical Care, Inc. is a Pennsylvania corporation. Its principal New York office is in the County of New York.

5. Defendant Bradford J. Ebel is an individual residing in New York.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this proceeding and the parties, pursuant to CPLR § 302(a), because the defendant is a resident of the State of New York.

7. Venue is proper in this Court pursuant to CPLR § 503(a).

## FACTS

8. Ebel is a former corrections officer with strong ties to the state corrections institutions and law enforcement communities in New York. He was hired by CMC as its Vice

President of Business Development specifically because of his strong ties with law enforcement, his purported wealth of business contacts, and his political knowledge and experience with local sheriff offices and correctional facilities.

9. Over several years, starting approximately in 2011, Ebel engaged in a scheme to obtain unauthorized reimbursement for unapproved and unauthorized expenditures, including multiple political and charitable contributions he made under his own name to develop his own business and personal reputation throughout New York.

10. In November 2016, Ebel notified CMC that he had been questioned by investigators from the New York Attorney General's Office about certain monetary contributions to electoral candidates. Upon learning that information, CMC conducted an internal review of the expense reimbursement reports Ebel had submitted to CMC throughout his employment.

11. That review revealed that Ebel had submitted expense reports and received reimbursement from CMC for, at least, $48,496.29 in unauthorized and unapproved personal expenditures.

12. None of these expenditures qualified for reimbursement under company policy or had otherwise been approved by CMC. In submitting these reimbursement request forms for unapproved "expenses," Ebel violated company policy. Ebel had never sought nor received proper authorization for these expenditures or for reimbursement by CMC.

13. In addition, CMC learned that Ebel had received unapproved and unauthorized payment from CMC supposedly as "reimbursement" for other expenditures he claimed to have made on behalf of the company, including payment of thousands of dollars he allegedly used to buy a personal car that he titled in his own name. This compensation was intentionally masked from CMC's owner and chief executive.

14. On February 24, 2017, CMC informed Ebel that his employment will not continue on the same terms. CMC proposed modifications to his employment terms in order to reduce his business development budget and to subject his expenses to heightened oversight. CMC also required that he repay CMC the sum of all reimbursement payments he had received for unauthorized expenditures throughout his employment.

15. The next business day, February 27, 2017, Ebel resigned.

16. Either that same day or shortly thereafter, Ebel announced that he had been hired by CFG Health Systems, LLC ("CFG") – a company that directly competes with CMC for contracts with state-run correctional facilities in New York.

17. CMC also learned after Ebel left that, while he was still in CMC's employ, Ebel had discouraged a current CMC client from continuing its contract with CMC. In a discussion with that client's facility representative, the representative questioned whether CMC had the ability to provide care for pre-arraignment inmates, suggesting that, when CMC proved incapable, the facility would be forced to incur the additional expense of seeking a new medical services provider on an emergency basis. Instead of bringing this issue to CMC's management team, Ebel told the representative he was in a position to help find a suitable replacement for CMC. While Ebel never raised the issue with CMC during his employment, within days of resigning, Ebel arranged a facility walk-through for CFG, his new employer.

18. After his resignation, on speakerphone before multiple witnesses, Ebel demanded that CMC reimburse him $1,500 for other alleged "expenses" he had incurred allegedly for CMC's benefit. Ebel said CMC should pay him that amount disguised as "additional salary" or "severance." CMC immediately refused, telling Ebel that what he proposed was illegal.

19. On March 23, 2017, CMC's outside counsel sent Ebel a demand letter. In that letter, CMC demanded that Ebel repay to CMC the $48,496.29 that he had illicitly received from CMC by submitting unauthorized and deceptive expense reimbursement reports. Ebel never responded to that demand. To date, he has not repaid any money to CMC.

20. That same day, CMC also sent a cease and desist letter to Ebel demanding that he stop making false statements about CMC. This letter was prompted by reports from several CMC clients and employees that Ebel had disparaged CMC.

21. In a malicious attempt to smear CMC and damage its business reputation, Ebel has made a number of false and defamatory statements to third-parties, including current and prospective clients of CMC. On or about March and/or April 2017, in conversations with management of the corrections facilities in New York that have current contracts with CMC, Ebel stated in form and substance that: (i) CMC was insolvent; (ii) CMC had been indicted for criminal wrongdoing; and (iii) the police had raided CMC's offices and/or the homes of CMC executives.

22. At the time of these statements, Ebel knew each of them was false. He made them knowingly and maliciously with the intent to harm CMC. He made these knowingly false statements in order to serve his own purposes in developing business for CFG by harming CMC's reputation and ability to compete in the marketplace.

23. Moreover, Ebel has admitted making these slanderous statements. On a call placed to Ebel and witnessed by numerous officers and representatives of CMC, CMC's executive confronted him regarding his actions. Ebel declined to identify persons to whom he had spoken – beyond those identified by CMC – but admitted to making the false, slanderous statements noted above and promised to stop.

24. He did not stop.

25. On March 9 and 10, 2017, in Batavia, New York at an administrators' conference, Ebel spoke to a facility administrator of a CMC client and inquired about the administrator's planned future arrangements with CMC. Ebel told the client to avoid future business with CMC, falsely impugning CMC's ability to continue in business, and offered to help him find opportunities elsewhere "with Hunter."

26. In another incident in early June, the same facility administrator confronted Ebel and asked him to provide support for his derogatory and negative statements about CMC, questioning why no other information was available beyond Ebel's assertions. In response, Ebel doubled-down, and reiterated his false statements about CMC and said that more information was "coming down the pike," strongly suggesting that it was in the facility's own interest to cease doing business with CMC.

27. In another incident, a facility health services administrator heard from county officials that Ebel had told them that law enforcement had "raided" the home of a former CMC officer and that law enforcement had subpoenaed CMC's email from various county jails. That administrator also said that the county official stated that CMC's contract with the county would be "going out for bid" at the end of the year – implying that CMC's contract would be canceled or not renewed due to Ebel's slander.

**FIRST CAUSE OF ACTION**
<u>Conversion</u>

28. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

29. Defendant improperly sought and wrongfully obtained under false pretenses at least $48,496.29 from plaintiff.

30. Plaintiff has a superior ownership interest in and right to this sum, which defendant illegally obtained through false pretense.

31. Defendant deprived plaintiff of this sum of money when he retained the money for himself instead of repaying the money to defendant, as demanded.

32. Despite demand, defendant failed to repay the money.

33. Defendant has been damaged by plaintiff's unlawful conduct in an amount to be determined at trial, but not less than $48,496.29.

## SECOND CAUSE OF ACTION
### Defamation Per Se

34. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

35. Defendant published false and defamatory statements about plaintiff, including statements that plaintiff was insolvent, that plaintiff had been indicted for criminal wrongdoing, and that law enforcement had raided plaintiff's offices.

36. These false statements tend to disparage plaintiff in the way of its business or trade.

37. The false statements were about and concerning plaintiff. The parties hearing such false statements reasonably understood them to be about plaintiff because each statement named or otherwise identified plaintiff.

38. Defendant published such defamatory statements by making the statements to third parties, including plaintiff's customers and potential customers, as identified herein.

39. Defendant published these false statements to third parties in New York by making the statements in-person to those third parties, and the defamatory statements were actually heard by those third parties.

40. Every defamatory statement identified by plaintiff that was published by defendant is categorically false, and contained statements that are false and that malign CMC's honesty, ethics, trustworthiness, dependability and/or professional or business abilities.

41. The statements are *per se* defamatory because they implicitly and explicitly accuse CMC of serious criminal wrongdoing and defame CMC in its profession or trade.

42. Defendant's defamatory statements expose CMC to public contempt, hatred, ridicule, aversion and disgrace.

43. Defendant's publication of these false and defamatory statements was neither privileged nor authorized in any way.

44. Defendant made and published these false and defamatory statements concerning CMC knowingly and maliciously, with ill will and specific intent to defame and injure CMC, and without justification, to serve his own interests in unlawfully and unfairly competing for CMC's existing and prospective business.

45. As a direct and proximate result of defendant's publication of these false and defamatory statements, plaintiff has incurred damages, including *per se* injury to its business reputation, pecuniary loss, and loss of business and business opportunities, in an amount to be determined at trial.

WHEREFORE, plaintiff demands judgment against defendant as follows:

(a)     awarding CMC compensatory and punitive damages in an amount to be determined at trial, but not less than $48,496.29 on the first cause of action, and not less than $1 million on the second cause of action, together with the reasonable attorneys' fees costs and expenses incurred by CMC in prosecuting this action; and

(b)     granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       June 15, 2017

                                        KASOWITZ BENSON TORRES LLP

                                        By:   /s/ Michael P. Bowen
                                              Michael P. Bowen (mbowen@kasowitz.com)

                                        1633 Broadway
                                        New York, New York 10019
                                        (212) 506-1700

                                        *Counsel for Plaintiff Correctional Medical Care, Inc.*